OF

# THE DECISIONS

OF

# THE SUPREME COURT OF ALABAMA.

## JANUARY TERM, 1834.

---

### SULLIVAN *VS* THE STATE.

1. Where A, being in the possession of a house, on public land, under a lease from B, who, previously, by a verbal contract, had sold the possessory right in the premises, to C, without A's knowledge, ejected C, (who had entered,) and burned the house—it was held, that an indictment for arson, lay not against A.

At a term of the Circuit Court of Walker County, begun and held on the first Monday after the fourth Monday in October, 1833, James Sullivan was indicted for arson—in that, in the County aforesaid, he wilfully unlawfully and maliciously did set fire to, and burn a certain dwelling house of one John Spurgeon.

Under this indictment the prisoner was found guilty, and condemned to be executed.

These were the facts proved on the trial.

*John Spurgeon*, the prosecutor, swore, that in the month of June, 1833, he moved into the house, charged, in the indictment, to have been burned : that the house was of his property, and that he remained in possession about two days : that Sullivan, with others came to the house, in the day time, and commanded the prosecutor to leave it. That the prosecutor left the house, and after having gone about one hundred and fifty yards, saw Sullivan throw down the house and burn the logs.

It further appeared, that the premises were situated on government land; and that the possessory right to them, was in one Clark, the son-in-law of the prosecutor, who had rented them to the prisoner, for one year ; and that the prisoner was in possession under that lease, and had a crop growing on the premises. Previous to the lease, by Clark, to the prisoner, Clark had, by verbal contract, agreed to sell the same premises to the prosecutor, but, of which sale prisoner was not informed.

The prisoner was proved to have been in possession, and that he cultivated the land on which the house was situated; and that he used the house to keep his farming tools in.

The Circuit Court, in reference to these facts, charged the jury, that the prosecutor had a right, under the sale from Clark, to take possession as he did; and that it was immaterial, whether the prisoner knew of the sale or not, the pulling down part of the house, and setting fire to the balance, and

burning any part of it, constituted arson. The Court, however, reserved the question as novel and difficult, for the decision of the Supreme Court.

*Peck*, for the prisoner. Arson must be with a felonious intent—here the intent is clearly shewn, and it is not felonious. The burning must be malicious— here the party was a tenant, and could have been guilty of no malice.—2 Russ. 487, 488; 4 Black. 222, note 2; Holmes's case, Cro. Car. 376-7. He was a lessee for years—so there was no arson; for, say these authorities, a lessee for years is not guilty of arson. Again—the sale here, to the prosecutor was void, being by parol.—7 Johns. 205.

The prisoner was in possession lawfully; his tools were in the house; he knew nothing of the right of the prosecutor, and he had the possession, at the time of the burning. The fact that the prosecutor went into the house, did not give him possession.— He was an intruder. Suppose one comes into my house, and forces me out, and unable to eject him, I burn the house—would this be arson?

*Attorney General*, contra. We agree, as to the law, but not as to its application. The felonious intent was a fact for the jury: the question was properly referred to them, and they only could decide it. The throwing down the house, before burning, could not diminish the offence. A man may commit felony, even in the burning of his own house, if, by the act he injures the property of others. But the

house, here, was not that of the prisoner—the prosecutor was in the possession, and the burning was with the clear intent to injure him.—2 East. C. L. 226; Leach C. L. 218; 2 Russ. 488.

During a lease, the house is the property of a tenant; and the owner, in burning it, might be guilty of arson.—Foster C. L. 115.

The prosecutor was in peaceable possession, under a sale from Clark; and the validity of that sale could not influence the intent of the prisoner, in the act. The lease, also, was verbal; and previous to the possession of the prosecutor, the house was vacant. The land was public domain, and the possessory right thereto rests on mere occupany.—1 Stew. 600. Now, if the prosecutor had the occupancy, he had the only right which could accrue, and the burning was arson.

LIPSCOMB, C. J.—This was an indictment, in the Circuit Court of Walker County, for arson, on which there was a conviction, and points reserved for the revision of this Court.

The facts, as presented by the record, are these.— The house charged to have been burnt, is on public land; it was a small cabin in a field, that one Clark claimed to have the good will to, as it is commonly called among the squatters; or, in other words, the possessory right, as the improver. He made a verbal contract of sale to the prosecutor, of the premises; but there was no possession taken at the time of the sale, and he, afterwards, in the month of February last, leased the same premises to the prisoner for one

year, without apprising him of the previous verbal contract of sale, to the prosecutor.

The prisoner went into the possession under the lease, and planted and cultivated the field, and used the cabin for securing his plantation tools, when not using them ; and he does not appear to have been informed of any pretended claim to the premises in question, until some time in June, when he found the prosecutor in the house, where he had been two days. He then, with two others, ordered him to go out of the house, saying he would have no such rogue on his premises.

The prosecutor, after much abuse, as he swears, left the house. The prisoner then removed the household furniture belonging to the prosecutor, out side the enclosure, and then pulled down the house and, set the logs on fire, which were partially consumed.

It is very clear, from the evidence, that the possession was with the prisoner : he had planted in peace and continued to cultivate, without any disturbance, or assertion of right on the part of the prosecutor, from February, until June. Under such circumstances, the prosecutor was an intruder and a trespasser; and the turning or ordering him out, would not have sustained a prosecution for a trespass.

The judge seems to have regarded the *quo animo*, as wholly immaterial, in constituting the offence of arson. It is true, that it was not material in this case; because, under no aspect, could the facts presented, be made arson. But, in a case, under different circumstances, the intention might be essential.—

In this case, the prisoner did nothing more than he had a right to do ; and neither committed, nor believed himself to have committed crime.

It is deeply to be regretted, that he has been made to suffer so much, and incur so much expense and trouble, under the forms of law. The life and reputation of the citizen should never be jeopardised, on such slight grounds.

The judgment and the sentence of the Circuit Court must be reversed and set aside, and the prisoner discharged.